**BENISTAR EMPLOYER SERVICE TRUST CO., Benistar Ltd. Benistar Client Services, Inc., Benistar Admin Services, Inc., Benistar 419 Plan Services, Inc., Benistar 419 Plan and Trust, Step Plan Services, Inc., Step Plan & Trust, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 05–5679.

United States Court of Appeals, Second Circuit.

June 5, 2006.

John T. Morin, Ira B. Stechel, Jennifer L. Marlborough, Wormser, Kiely, Galef & Jacobs LLP, New York, NY, Ira B. Silverstein, Thorp Reed & Armstrong, LLP, Of Counsel, Philadelphia, PA, for Petitioners.

Eileen J. O'Connor, Assistant Attorney General; Richard T. Morrison, Deputy Assistant Attorney General; Frank P. Cihlar, John A. Dudeck, Jr.; (Kevin J. O'Connor, United States Attorney, on the brief), Washington, D.C., for Respondent.

PRESENT: DENNIS JACOBS and B.D. PARKER, Circuit Judges, and LORETTA A. PRESKA, District Judge.*

### SUMMARY ORDER

Petitioners–Appellants Benistar Ltd. and related entities (collectively "Benistar") appeal from the August 19, 2005 order of the United States District Court for the District of Connecticut (Arterton, J.) denying Benistar's petition to quash, and granting enforcement of, a third-party ad-

---

* The Honorable Loretta A. Preska, United States District Court for the Southern District of New York, sitting by designation.

ministrative summons issued by the Internal Revenue Service ("IRS") on December 10, 2004 to Hartford Life Insurance Company ("Hartford Life"). The IRS issued the summons under Section 7602 of the Internal Revenue Code (the "Code"), 26 U.S.C. § 7602, as part of an ongoing investigation into the tax liability of Benistar for potentially having promoted abusive tax shelters, in violation of Section 6700 of the Code. 26 U.S.C. § 6700. The summons directs Hartford Life to produce various books and records and to appear to give testimony on matters related to the investigation. Benistar primarily objects to the requirement that Hartford Life disclose Benistar's client list. Familiarity is assumed as to the facts, procedural context, and issues specified for review.

▮ The district court correctly held that Benistar is precluded from raising challenges to the summons, as the arguments were raised, considered, and rejected in proceedings before the Southern District of New York, *see Benistar 419 Plan Services, Inc. v. United States*, No. 04-CV-4308, 2004 WL 2601274 (S.D.N.Y. October 26, 2004), *affirmed*, 144 Fed. Appx. 902 (2d Cir.2005), and in the Eastern District of Pennsylvania, *see Benistar 419 Plan Services, Inc. v. United States*, No. 04-CV-2494 (E.D.Pa. Dec. 22, 2004). *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995) (explaining that the doctrine of issue preclusion, also called collateral estoppel, "bars the relitigation of issues actually litigated and decided in [a] prior proceeding, as long as that determination was essential to that judgment"). Those courts specifically rejected Benistar's arguments that (1) since the government sought the names of unidentified taxpayers, the government was required to follow "John Doe" summons procedures; (2) the government failed to establish a *prima facie* case for enforcement of the summons under *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); and (3) the summonses were abusive.

Benistar raises three arguments against preclusion.

First, Benistar argues that Hartford Life (unlike the entities subpoenaed in the other cases) is not a "third-party recordkeeper," but Benistar fails to explain why that matters.[2]

Second, Benistar argues that the summonsed information is irrelevant to the IRS investigation of potential abuses by Benistar. Specifically, the summons to Hartford Life requests documents on two welfare benefits plans—the Benistar 419 Plan and the STEP Plan. (The summonses in the other cases apparently only involved the Benistar 419 Plan.) Benistar contends that it never organized or sold the STEP Plan, and that Hartford Life sold its 419 Plan prior to 2003, when the regulations concerning Section 419A(f)(6)'s carve-out exception were adopted.

With respect to the STEP Plan, Benistar acquired the plan in 2002. Although Benistar did not sell the STEP Plan originally, there is a genuine factual dispute as to whether Benistar ever promoted the Plan, and there is evidence that Benistar may have promoted other abusive tax schemes to the STEP plan customers.

---

2. Prior to July 22, 1998, whether a summons was served on a "third-party recordkeeper" or not was critical, as, under Section 7609, a taxpayer only had the right to seek to quash a third-party summons if it was served on a third-party recordkeeper. The IRS Restructuring and Reform Act of 1998, Pub.L. No. 105-206, 112 Stat. 685, however, expanded the kinds of summonses that a taxpayer could seek to quash. Now, whether a third-party is a recordkeeper does not determine whether a summons may be issued or whether it may be quashed, but only determines the appropriate procedures for serving the summons. (For example, a third-party recordkeeper may be served by certified or registered mail.)

The IRS is entitled to investigate Benistar's potential liability for any illegality in the STEP Plan. See *PAA Mgmt. Ltd. v. United States*, 962 F.2d 212, 216 (2d Cir. 1992) ("In view of the Code's broad delegation of summons authority to the IRS, the requirements that a summons have a legitimate purpose and relevance have been interpreted liberally in favor of the IRS."). With respect to the Hartford Life policies under the 419 Plan, Benistar erroneously argues that there could be no intended violation of the Code with respect to welfare benefit plans prior to the issuance of Regulations in 2003, *see* 26 C.F.R. § 1.419A(f)(6)–1(c), as prior to that issuance, one could not know whether a plan met the carve out exception's criteria. The Tax Court's decision in *Booth v. Commissioner*, 108 T.C. 524, 1997 WL 328581 (1997)—a case cited by Benistar—is contrary: The IRS was prosecuting plans prior to the adoption of Regulations, and the fact that Regulations were eventually adopted to clarify the IRS's position does not mean that there could be no violation of the Code prior to the clarification.

Third, Benistar suggests—in a single sentence—that issue preclusion is inappropriate because the parties here are different from those involved in the Southern District of New York and Eastern District of Pennsylvania actions. Benistar does not, however, articulate how the (related) parties differ or differ in interest, and the parties have been represented by the same counsel in all of the litigations. To the extent the parties differ, we therefore assume that they are still in privity such that issue preclusion is applicable.

■ As part of its appeal, Benistar seeks to supplement the record to include a letter from the IRS stating that the Benistar 419 Plans are "reportable transactions" under Section 6112 of the Code and demanding the names of the plan participants. The letter was not before the district court. Benistar argues that the letter establishes that the IRS has already concluded that the Benistar 419 Plans are abusive tax shelters and thus that the IRS does not need the information sought in the summons. That a transaction is reportable under Section 6112 does not, however, mean that it is necessarily abusive. Moreover, the IRS is entitled to investigate what Benistar told its clients and the amounts of deductions its clients took so that the IRS can assess Benistar's full penalty (if any). Accordingly, we deny the motion to supplement the record.

For the reasons set forth above, the judgment of the district court is **AFFIRMED** and the motion to supplement the record is **DENIED**. The mandate shall issue forthwith.